RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0311p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

REGINA PROVENZANO,

        *Plaintiff-Appellant,*

       *v.*

LCI HOLDINGS, INC.,

        *Defendant-Appellee.*

No. 10-1639

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 08-15295—Thomas L. Ludington, District Judge.

Argued: October 4, 2011

Decided and Filed: December 15, 2011

Before: KEITH, GRIFFIN, and STRANCH, Circuit Judges.

————————————

## COUNSEL

**ARGUED:** Russell C. Babcock, THE MASTROMARCO FIRM, Saginaw, Michigan, for Appellant. Marlo J. Roebuck, JACKSON LEWIS, LLP, Southfield, Michigan, for Appellee. **ON BRIEF:** Russell C. Babcock, Victor J. Mastromarco, Jr., THE MASTROMARCO FIRM, Saginaw, Michigan, for Appellant. Marlo J. Roebuck, Maurice G. Jenkins, JACKSON LEWIS, LLP, Southfield, Michigan, for Appellee.

————————————

## OPINION

————————————

JANE B. STRANCH, Circuit Judge. Plaintiff Regina Provenzano seeks reversal of the district court's grant of summary judgment in favor of Defendant LCI Holdings, Inc. Provenzano contends LCI discriminated against her based on her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws. § 37.2101

1

*et seq*. Although the district court misapplied the prima facie analysis for a failure to promote discrimination claim, the district court's grant of summary judgment is **AFFIRMED** because Provenzano has not proven pretext.

## I.  BACKGROUND

Regina Provenzano was born on September 24, 1958 and has a high school diploma and an associate's degree in retail management.  In 1997, at age thirty-nine, Provenzano started working for LCI as a sales associate in its Liz Claiborne Outlet store in Birch Run, Michigan, in LCI's Midwest District.  Approximately two years later, Provenzano was promoted to a full-time supervisor position by then-assistant manager Erica Hall.  Provenzano also occasionally traveled to assist other stores that were just opening.

On April 13, 2008, Judy Babcock (age thirty-three) was promoted to assistant manager at the Birch Run store.  The store manager, Connie Romanetto (age sixty-one), recommended Babcock for the promotion and then-district manager Erica Hall approved the recommendation.  The open position was not publicized to any employees and Provenzano was not asked to, nor did she, apply for the position.  Provenzano alleges she was more qualified than Babcock for the promotion because she had worked at the store longer and had a high school diploma and an associate's degree, whereas Babcock had neither.  Hall testified that Babcock was a superior candidate because she met more of the performance qualifications on the job description than did Provenzano.

Throughout 2007 and 2008, due to economic conditions, LCI underwent company-wide restructuring, directed at reducing costs by aligning each store's projected sales volume with a template-based mix of non-supervisory and supervisory positions. The plan was executed in two phases: one in February 2007 and one in June 2008.  In the Birch Run store in 2007, two full-time associates in their twenties were reduced to part-time associates; Provenzano was not impacted during this phase.  In June 2008, LCI eliminated the full-time supervisor position in the Midwest District and reduced many employees holding such position to part-time supervisors.  Five of those

eleven full-time supervisors were under the age of forty. While the other supervisors transitioned in June, Hall permitted Provenzano to postpone her reduction to part-time supervisor until July in order to utilize the medical benefits for an additional month.

Hall testified that in late July 2008 she told store manager Romanetto that she could improve her performance and remain store manager or step down from the position. When Romanetto elected to assume an assistant manager position, twenty-eight-year-old Summer Kennard transferred into the store manager position, leaving the Birch Run store with six management-level employees. Hall testified that because LCI's restructuring mandate permitted only four, in August 2008 she offered Sanburn and Provenzano the option to step down as part-time supervisors and accept positions as part-time sales associates or leave the company. Both chose to step down. Provenzano testified that her reduced hours and pay compelled her to resign her position with LCI as of November 10, 2008.

On November 26, 2008, Provenzano filed a complaint alleging age discrimination under the ELCRA against LCI in Saginaw County Circuit Court. On January 2, 2009, LCI removed the case to federal court, and Provenzano amended her complaint to include a cause of action under the ADEA. After discovery, LCI moved for summary judgment.[1] On April 12, 2010, the district court granted LCI's motion. Specifically, the court applied the *McDonnell Douglas* burden-shifting framework to Provenzano's claims and found she had failed to satisfy the fourth prong of her prima facie case, and had failed to prove pretext in the face of LCI's nondiscriminatory reasons for the promotional decision. Provenzano appeals both determinations.

---

[1]In her response, Provenzano clarified that her age discrimination claim is based on LCI's decision to promote Judy Babcock to the position of assistant manager instead of Provenzano and that all "other acts of discrimination alluded to in [LCI's] brief and discussed in more detail in [Provenzano's] response are meant to place the decision to deny the promotion to [Provenzano] into context."

## II.  DISCUSSION

### A.     Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).  Summary judgment is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (2010).  The moving party has the burden of proving the absence of a genuine issue of material fact and its entitlement to summary judgment as a matter of law.  *Celtex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All facts, including inferences, are viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). LCI moved for summary judgment, therefore this Court must view the evidence in the light most favorable to Provenzano and draw all reasonable inferences in her favor in determining whether there exists a dispute of material fact for submittal to a jury.

### B.     ADEA Claim

The ADEA prohibits an employer from failing or refusing to hire, discharging, or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence.  *Gieger*, 579 F.3d at 620.  "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler*, 317 F.3d at 570 (citation and internal quotation marks omitted).  "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred."  *Id.*

Regardless of the type of evidence submitted, the burden of persuasion remains on ADEA plaintiffs to demonstrate "that age was the 'but-for' cause of their employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 n.4 (2009).

Provenzano relied entirely on circumstantial evidence. The three-step framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and modified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981), guides the analysis of age discrimination claims based upon circumstantial evidence. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). In the first step, the employee carries the initial burden of establishing a prima facie case of age discrimination; if the employee meets this burden, the second step requires the employer to respond by articulating some legitimate, nondiscriminatory reason for the adverse employment action at issue. *McDonnell Douglas*, 411 U.S. at 802. Third, assuming such a response is made, the employee then bears the burden of rebutting this proffered reason by proving that it was pretext designed to mask discrimination. *Id.* at 804.

This "three-part inquiry provides 'an allocation of the burden of production and an order for the presentation of proof in [employment discrimination] cases.'" *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 659 (6th Cir. 2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). At all times, the ultimate burden of persuasion remains on the plaintiff to demonstrate that age was the "but-for" cause of their employer's adverse action. *See Burdine*, 450 U.S. at 253. At no time does the defendant carry the burden of persuasion. In contrast, the burden of *production* shifts between litigants as the analysis advances.

This Court has explained the relevant burdens at the summary judgment stage:

> On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000). Thus, the plaintiff must first submit evidence from which a reasonable jury could conclude that a prima facie case of discrimination has been established. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). The defendant must then offer sufficient evidence of a legitimate, nondiscriminatory reason for its

action.  *Id.*  If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination.  *Id.*

*Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007).  The plaintiff's burden to demonstrate pretext in the final step then "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination."  *Burdine*, 450 U.S. at 256.  In evaluating pretext and the plaintiff's ultimate burden, the court should consider all evidence in the light most favorable to the plaintiff, including the evidence presented in the prima facie stage.  *See Peck v. Elyria Foundry Co.*, 347 F. App'x 139, 145 (6th Cir. 2009) (citing *Hicks*, 509 U.S. at 511).

The district court first held that Provenzano did not establish a prima facie case of age discrimination under *McDonnell Douglas.*  Provenzano disputes this finding.

### 1.     Prima Facie Stage

In the first stage of the *McDonnell Douglas* analysis, Provenzano must establish a prima facie case of discrimination.  To make out a prima facie case of age discrimination based on LCI's failure to promote her, Provenzano must show that (1) she is a member of the protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied.  *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000)); *cf. Brennan v. Tractor Supply Co.*, 237 F. App'x 9, 16 (6th Cir. 2007).[2]  Provenzano's burden at the prima facie stage is "not onerous" and "poses a burden easily met."  *Cline*, 206 F.3d at 660 (citing *Burdine*, 450 U.S. at 253).

---

[2]The fourth element in *Brennan* differs slightly from that in *White* by requiring a plaintiff in a failure to promote claim to show that similarly-situated employees not in the plaintiff's protected class received promotions.  Although *Brennan* is an ADEA case and *White* is a Title VII case, this Court has clearly rejected the "similarly situated" language in a failure to promote claim in favor of the language established in *Nguyen*.  *White*, 429 F.3d at 241.  *Nguyen* places the proper emphasis on the relative qualifications of the plaintiff and the promoted individual.  *Id.* at 240-41.

The prima facie case is meant simply to force a defendant to proceed with its case. *Id.* at 660 (citation omitted).

We would do well to pause here and admit that while the burden-shifting analysis of *McDonnell Douglas* was created to assist in the presentation of a discrimination case, it often fails to fulfill its purpose. That failure is particularly pronounced in the context of summary judgment where the burden-shifting analysis can obfuscate the appropriate question—whether there exists a genuine issue of material fact. Even if that over-arching question is given its due, opportunities abound for confusion in applying the three stage formula to the evidence in a case. "While the discrete stages are meant to facilitate litigants and courts in reaching and resolving that ultimate question of discrimination, when misapplied, they tend to distract courts from the central issue." *Cline*, 206 F.3d at 660. One common misapplication is the tendency to push all of the evidence into the prima facie stage and ignore the purpose for and application of the three stages. Such was the problem here.

The district court merged its analysis of the second (nondiscriminatory justification) and third (pretext) stages of the *McDonnell Douglas* test into its evaluation of Provenzano's prima facie case.[3] This is clear from the one-sentence analysis of the latter two stages: "For the same reasons that Plaintiff cannot establish the fourth element of a prima facie case of age discrimination, Plaintiff cannot establish pretext." *Provenzano v. LCI Holdings, Inc.*, No. 08-15295-BC, 2010 WL 1462937 at *7 (E.D. Mich. Apr. 12, 2010). This was error.

We now turn to analysis of the evidence appropriate to the prima facie stage of this failure to promote case. We begin by examining Provenzano's qualifications in both the second (qualification) and fourth (comparison to promoted employee) prongs. *White*, 429 F.3d at 242–43. However, this evaluation must be conducted independently of LCI's proffered nondiscriminatory reason and must not conflate the prima facie and

_____

[3]It considered such evidence as LCI's workforce-reduction justifications (properly to be presented by LCI at the second stage to show its legitimate, nondiscriminatory purpose) and Provenzano's failure to present evidence of motive other than Romanetto's jealousy (properly a challenge to Provenzano's burden to show pretext at the third stage).

pretext stages of the *McDonnell Douglas* test. *Id.* at 242. An important function of the prima facie test is to eliminate the most common nondiscriminatory reasons for the employer's action. *See Burdine*, 450 U.S. at 253-54. Therefore, a general weighing of the qualifications of Provenzano and Babcock is necessary at the prima facie stage; however, this light review must be distinguished from the more rigorous comparison conducted at the later stages of the *McDonnell Douglas* analysis. *See Burdine*, 450 U.S. at 255 (after the defendant raises a legitimate nondiscriminatory reason, "the factual inquiry proceeds to a new level of specificity"). As noted in *White*, this careful distinction is especially necessary in cases such as this one, where the employer asserts as its nondiscriminatory reason for failing to promote the plaintiff that it chose to hire a candidate it considered more qualified. *See White*, 429 F.3d at 247 (Moore, J., concurring).

There is no dispute that Provenzano satisfied the first three elements of the prima facie stage; only the fourth element is at issue. Provenzano contends that the fourth element of the prima facie case should be satisfied by showing merely that a younger person was promoted to a position instead of Provenzano. This Court directly considered and rejected Provenzano's argument in *White*, holding that "it is insufficient for a plaintiff in a failure to promote [discrimination] case merely to point to [a non-protected person] who received the job in satisfying the fourth prong." White*, 429 F.3d at 241. This Court emphasized that "it is incumbent upon the plaintiff to establish that she and the non-protected person who ultimately was hired for the desired position had similar qualifications." *Id.* at 242.

In a failure to promote claim, the emphasis in the fourth element is on the relative qualifications of the plaintiff and the employee who actually received the promotion. *White*, 429 F.3d at 240-41. The prima facie burden is not intended to be onerous, *Cline*, 206 F.3d at 660 (citing *Burdine*, 450 U.S. at 253), and Provenzano is not required to establish that she and Babcock had the exact same qualifications. Requiring a plaintiff to show identical qualifications to another individual is not realistic from a human standpoint. We recognized this practical reality in *Ercegovich*, rejecting an exact

matching requirement for "similarly-situated" comparators in an ADEA claim. 154 F.3d at 352-53. Instead, what is required in a failure to promote case is for the plaintiff to show she possesses "similar qualifications" to the employee who received the promotion.

A comparison of Provenzano and Babcock reveals that Provenzano presented sufficient evidence to permit a reasonable trier of fact to conclude that she and Babcock were similarly qualified for the position of assistant manager. Provenzano had more experience and education than Babcock; she had been a supervisor longer, had helped in other stores, and held a high school diploma and associate's degree. In contrast, Babcock had a stronger performance record, without any written or verbal warnings in comparison to Provenzano's multiple counselings. Although their strengths and weaknesses were in different areas, Provenzano's experience and education made her similarly qualified to Babcock. This is the extent of the inquiry at the prima facie stage and Provenzano satisfied it.

### 2.      Nondiscriminatory Justification

Once the plaintiff meets her prima facie burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for failing to promote the plaintiff to the position sought. *Burdine*, 450 U.S. at 254; *White*, 429 F.3d at 244. LCI is not required to persuade the court that it was actually motivated by the proffered reasons. *Burdine*, 450 U.S. at 254. Rather, it is sufficient for LCI to raise a genuine issue of fact as to whether it discriminated against Provenzano. *Id.* In order to accomplish this, LCI must clearly set forth, through the introduction of admissible evidence, the reasons for not promoting Provenzano. *Id.* at 255.

This stage of the *McDonnell Douglas* framework is where it is appropriate to consider district manager Hall's and former store manager Romanetto's opinions of Provenzano as compared with Babcock. LCI has asserted that it chose not to promote Provenzano because it decided to promote a more qualified candidate and because it felt that Provenzano's performance record rendered her unpromotable to assistant manager. In Hall's deposition and affidavit, she gave a detailed description of Babcock's

performance-related attributes and Provenzano's performance-related deficiencies. The district court properly found that LCI met its burden of production at this second stage of the *McDonnell Douglas* analysis.

### 3.    Pretext

In the third and final stage of the *McDonnel Douglas* analysis, the presumption of discrimination is gone and the plaintiff must demonstrate that the employer's proffered nondiscriminatory reason was not the true reason for the employment decision, but rather a pretext for discrimination. *Burdine*, 450 U.S. at 256. A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler*, 317 F.3d at 576 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).

LCI asserts that Hall based her decision not to promote Provenzano on Provenzano's deficient performance record and the existence of a more qualified candidate. Provenzano offered several reasons in support of finding LCI's justifications pretextual: Babcock's lack of a high school education; Provenzano's experience assisting other stores; a history of promotions, transfers, and demotions that Provenzano alleges evidences a pattern of discriminating against older employees; and a corporate email referencing the target customer's age group.

Provenzano's first two grounds for finding pretext involve the relative qualifications of Provenzano and Babcock. "Relative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains 'other probative evidence of discrimination.'" *Bartlett v. Gates*, 421 F. App'x 485, 490-91 (6th Cir. 2010) (citing *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627-28 (6th Cir. 2006)).

Provenzano claims pretext arguing that Babcock cannot be qualified because she lacks a high school diploma. The job description for the assistant manager position lists "High school Diploma and equivalent retail fashion management experience; College Degree a plus." Provenzano argues this makes a high school diploma a mandatory qualification, making her a plainly superior candidate. Hall testified that she mistakenly believed at the time of the promotion that Babcock possessed a high school diploma. Provenzano testified that Romanetto suggested otherwise. However, whether Hall or Romanetto knew of Babcock's lack of a high school diploma is not decisive because Babcock was not unqualified for the position merely because she lacked a high school diploma.

The assistant manager job description lists over forty "Knowledge, Skills and Abilities." The job description does not indicate and no evidence, except Provenzano's personal belief, suggests that any of the listed qualifications was mandatory or weighed more heavily in the promotion process. In fact, Hall asserts that Provenzano lacks both good communication skills and an ability to partner with superiors, which are two of the other "Knowledge" qualifications listed along with the educational qualification. Under Provenzano's analysis, neither she nor Babcock would be qualified. Because no particular qualification was mandatory, Babcock's lack of a high school diploma alone does not establish that "no reasonable employer would have chosen [Babcock] over [Provenzano]." *See Bartlett*, 421 F. App'x at 490-91.

Provenzano also argues LCI's claim that Provenzano was not promotable is pretextual because LCI chose Provenzano to assist other Liz Claiborne stores. Provenzano testified:

> I went to stores that were in dire need of help that didn't have a full staff and I helped them get their stuff—you know, their store back in order and I could do all this, but yet I couldn't be an assistant manager. I didn't understand it.
> I would go to Colorado for a month at a time. They didn't have a manager and I would literally run the store, and get it up on its feet and get—you know, until they hired a manager. They called me a lot to go to different places, Colorado, all over Utah. And I did a lot for this company but yet they didn't promote me and I felt that that was wrong.

Provenzano alleges she performed many of the responsibilities of an assistant manager while traveling to those stores and this demonstrated her competency as well as LCI's approval of her in that role.

Hall does not contest Provenzano's qualification to travel to assist other stores. Instead, Hall asserts that it was Provenzano's "performance issues" that made her not promotable. In explaining the promotional decision process, Hall stated

> People are rated on their performance on not only a daily basis, a weekly basis, but a monthly basis, and even though someone may have performed at one level at one time, if there is not a consistency over a certain time period or there's issues that may come up, when decision time is made, when it's time to make the decision, the best decision is going to be made that's going to be appropriate and it's going to be based on performance.

In essence, LCI takes the position that Provenzano was not the most attractive candidate at the time of promotion, not that she was categorically unqualified for the assistant manager job. Therefore, Provenzano's experience assisting other stores does not conclusively establish that she should have been promoted over another candidate without that experience and does not establish that "no reasonable employer would have chosen [Babcock] over [Provenzano]." *See Bartlett*, 421 F. App'x at 490-91.

In order to present a triable issue of fact as to pretext, Provenzano could also show that she was as qualified as, if not better qualified than, Babcock, along with proof of "other probative evidence of discrimination." *Id.* A more searching evaluation of the relative qualifications of the two candidates is conducted at this stage than was required at the fourth prong of the prima facie case. *See Burdine*, 450 U.S. at 255. Although Provenzano had been with LCI for only three years longer than Babcock, Provenzano had six more years of experience in retail sales supervision, as well as experience assisting other stores. In addition, Provenzano possessed superior educational credentials, including an associate's degree in an area relevant to the promotion position.

Babcock, however, had a much stronger performance record during her time with LCI than did Provenzano. Babcock had no disciplinary warning, while Provenzano had

several, both written and verbal, in her personnel file. These warnings pertained to violations of LCI's security policy, which Hall testified were violations of one of the "top security rules," permitting automatic advancement in the disciplinary process to the final written warning stage, the next stage being termination. Provenzano had also been counseled on her failure to partner with superiors and her poor communication skills. In contrast, Babcock received positive feedback from employees and customers and was praised by Hall as having proper communication skills, being reliable, creating displays that were visually appealing, providing good results for the store, and having a positive attitude. Under these facts one could argue that Provenzano may not be as qualified as Babcock for promotion to a position that required significant interpersonal skills and the ability not just to follow, but also enforce, company policies and rules. However, even assuming equal qualifications, Provenzano must also show "other probative evidence of discrimination." *See Bender*, 455 F.3d at 627-28.

As further evidence of discrimination, Provenzano points to LCI's record of promotions, transfers, and demotions of other members of management and the contents of a corporate email received at some point during the summer after Babcock's promotion. Provenzano notes that as of January 1, 2008, individuals of the following ages held management positions at LCI's Birch Run store: 61, 51, 49, and 41; but, by August or September 2008, the ages of management were: 61, 41, 34, and 27. While Romanetto (age 61) was on a leave of absence for medical reasons, 30-year-old Annetta Kucab filled in as a part-time supervisor while continuing her duties at another store. When Romanetto died, Sanburn, age 51, filled the position. During this time period, Provenzano was demoted to a part-time sales associate position before she resigned in November. Provenzano produces only the fact of this management structure change without any further proof of age discrimination tied to these specific employment changes.

LCI explains that its employment decisions resulted from execution of its restructuring plan, which began in 2007 and continued through the operative period for this case. LCI provided statistics from the roster of employees in the Midwest District,

where the Birch Run store is located, one year after Babcock's promotion and the management restructuring that Provenzano highlights. At that point, the employees ranged in age from eighteen to seventy-two with forty-six percent being forty years of age or older.

Provenzano also testified that she observed an email sent to the Birch Run store from "corporate" that stated LCI wanted the stores to "go to a 30-something look and they're attracting the 30-year-old look instead of the 50-year-old look." Provenzano explained that

> It said in the email that they're going to turn the store around to look like 30-something so that the clothes would be geared toward the 30-year-old. In the email I interpret that they wanted to get rid of the younger [sic] people and want to get younger people in there.

Sanburn testified that she remembered receiving an email in the Birch Run store "saying that they wanted to try to sell to a younger crowd," but the email did not state anything with respect to the age of LCI's employees. LCI noted that it partnered with designer Isaac Mizrahi around this time to create a line of brighter and more vibrant clothes. During the marketing campaign, LCI identified its new customer base as "the perpetual 35 year old and women 35-54." Hall testified that at no point did LCI inform her that the ages of its employees need to match the age of its proposed customer base. As the district court held, even assuming that Provenzano's testimony regarding the email is admissible, Provenzano has not explained why it is probative of age discrimination when it only describes LCI's target customers and desired store appearance.

Provenzano's own testimony about how the promotion decision was made also provides context. Provenzano testified that she was not aware that Romanetto and Hall had made the promotional decision; that she never had any complaints about Romanetto or Hall when they were her supervisors or store manager; and that she never heard either of them make age-related remarks. Further, Provenzano offered a different rationale for Babcock's promotion when she testified that she believed Romanetto may have been "jealous" of her and afraid Provenzano was trying to take her job.

Provenzano has not produced sufficient additional probative evidence of discrimination to establish a triable dispute of material fact regarding pretext. *See Bartlett*, 421 F. App'x at 490-91; *Bender*, 455 F.3d at 627-28. Taking all of the evidence, including that presented in the prima facie stage, in the light most favorable to her, Provenzano has not established a genuine dispute of material fact that age discrimination was the "but-for" cause of LCI's decision to promote Babcock instead of Provenzano. Thus, the district court did not err in finding that LCI was entitled to summary judgment on Provenzano's ADEA claim.

## C.     ELCRA Claim

In addition to her discrimination claim under the ADEA, Provenzano also brings suit under the ELCRA. In contrast to the ADEA's "but-for" causation burden, under the ELCRA a plaintiff must ultimately prove that the defendant's discriminatory animus was a "substantial" or "motivating" factor in the decision. *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 192-93 (Mich. 2003) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244 (1989) (plurality opinion)). To determine whether a plaintiff has met this burden based on circumstantial evidence, Michigan has adopted the *McDonnell Douglas* analysis. *Cicero*, 280 F.3d at 584 (citing *Lytle v. Malady*, 579 N.W.2d 906, 914-15, 915 n.19 (Mich. 1998)); *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521 (Mich. 2001). Therefore, the same three-step framework analyzed above is applicable to Provenzano's ELCRA claim.

The district court applied the *McDonnell Douglas* test as articulated in the Michigan Supreme Court's decision in *Lytle v. Malady*, 579 N.W.2d 906 (Mich. 1998), and noted that, in age discrimination cases, the fourth element of the prima facie stage can be established with evidence that the defendant treated the plaintiff differently than persons of a different age class who engaged in the same or similar conduct. *See Town v. Michigan Bell Telephone Co.*, 568 N.W.2d 64, 68 (Mich. 1997). Although this test looks for "same or similar conduct" and the *Nguyen* test for an ADEA claim looks to "similar qualifications," the same evidence applies to both standards. Michigan courts have held that a comparison of qualifications is not required under the ELCRA, but they

have recognized that evidence of relative qualifications satisfies the fourth prong of the prima facie burden. *Hazle*, 628 N.W.2d at 524-25. Therefore, Provenzano's evidence of similar qualifications also satisfies her prima facie burden under the ELCRA.

However, for the reasons discussed in the ADEA analysis, Provenzano did not establish that LCI's proffered nondiscriminatory reason was pretextual. This failure is fatal to her ELCRA claim. Provenzano has not carried her ultimate burden of showing a disputed question of material fact existed that LCI's discriminatory animus was a "substantial" or "motivating" factor in its decision to promote Babcock instead of Provenzano. For these reasons, the district court correctly found that Provenzano had not proven pretext under the ELCRA and properly granted LCI's summary judgment motion on Provenzano's ELCRA claim.

### III.  CONCLUSION

For the foregoing reasons, the district court erred in holding that Provenzano failed to prove a prima facie case of age discrimination on her ADEA and ELCRA claims. However, the district court correctly held Provenzano did not show that LCI's proffered legitimate nondiscriminatory reasons for failing to promote her were pretextual. Therefore, the district court's grant of summary judgment in favor of LCI as to Provenzano's ADEA and ELCRA failure to promote claims is **AFFIRMED**.