NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0392n.06

No. 14-6209

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Jun 01, 2015

DEBORAH S. HUNT, Clerk

STEPHEN P. GELLER,

       Plaintiff-Appellant,

v.

HENRY COUNTY BOARD OF
EDUCATION,

       Defendant-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF
TENNESSEE

BEFORE:    CLAY, KETHLEDGE, and DONALD, Circuit Judges.

**CLAY, Circuit Judge.**  Plaintiff Stephen P. Geller appeals the district court order granting summary judgment in favor of Defendant Henry County Board of Education ("the Board"), in this civil suit where Geller alleges that he was demoted from his position as an assistant principal in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*[1]  For the reasons stated below, we **AFFIRM** the district court's grant of summary judgment in favor of the Board.

---

[1] Geller also asserted a claim under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101(a)(1). The relevant THRA provision employs similar language as that used in the ADEA and the analysis under both statutes is substantially the same. *Bundy v. First Tenn. Bank Nat'l Ass'n*, 266 S.W. 3d 410, 416 (Tenn. Ct. App. 2007). This claim is not addressed separately by either party and, accordingly, this opinion treats the disposition of the ADEA claim as dispositive of the THRA claim.

## BACKGROUND

Stephen P. Geller, born April 24, 1948, began working for Henry County School System in 1990, as a special education assistant. He was promoted in 1993 to the position of classroom teacher; and in 2006, he was promoted to the position of an assistant principal at Henry County High School, after having successfully applied to the Director of Schools[2] for that position. He performed his job well, and received superb reviews annually. But following the 2011–2012 school year, he was removed from the assistant principal position and transferred to a teaching position at the Alternative School, where his salary would be considerably less. Geller was 64 years of age at the time of this demotion, and he now claims that his removal was based on age discrimination. The facts of this case are largely undisputed. The principal question is whether or not Geller was required to have an administrator's license and, if he was not, whether Henry County's demand for Geller to become licensed was merely a pretext for demoting him on account of his age.

As a condition of Geller's promotion to assistant principal in 2006, the then-Director of Schools asked him to obtain a master's degree, which he did in 2008 from Bethel University in McKenzie, Tennessee. He was not, however, required by the then-Director of Schools to obtain an administrator's license. In 2009, the State of Tennessee adopted new rules for the qualification of administrative positions throughout its public school system. Beginning in September of that year, "assistant principals, teaching principals, or dual assignment personnel with more than fifty percent (50%) of their responsibilities involved in instructional leadership" were required to be licensed administrators or enrolled in the appropriate licensing program.

---

[2] The Director of Schools is responsible for, among other things, all teacher assignments, maintaining licensure records, and ensuring Henry County schools' compliance with applicable laws, regulations, and Board of Education rules. *See* Tenn. Code Ann. § 49-2-301.

Tenn. Comp. R. & Regs. 0520-02-03-.02(6) (2008). To earn a license, Geller would have to complete additional coursework and sit for the appropriate Praxis Series examination. Geller was aware of what needed to be done to earn a license, but chose not to apply because he remained under the impression that no license was required for him to continue serving as an assistant principal.

The State also changed the structure of its licensing program in 2009. Prior to that year, a professional educator could apply for a Beginning Administrator License ("BAL"), which she could later upgrade to a Professional Administrator License ("PAL") after completing a series of continuing education courses. Anyone who had not already obtained a BAL, or begun the requisite courses to become licensed by 2009, would be subject to the new regime. The BAL was replaced by the ILL-B (Instructional Leadership License-Beginner); the ILL-B, similar to the BAL, could be upgraded to a "professional" grade license, known as "ILL-P." Geller did not attempt to attain a BAL prior to the expiration of the old licensing regime; nor did he apply for a license under the new system.

By the 2010–2011 school year, the Director of Schools who had hired Geller was no longer serving in that position. His replacement, Sam Miles, was unaware that Geller lacked an administrator's license, which remained the case for the next two years.

In the spring of 2012, Geller was encouraged by the Henry County School Board to attend the Tennessee Academy for School Leaders' Principal's Academy. This seminar provided an administrator with the opportunity to earn continuing education credits, a requirement of maintaining an administrator's license. Earning a designated number of credits would enable an administrator to advance (or upgrade) her license to the next highest level (*i.e.*, beginner to professional). This particular seminar in the spring of 2012 happened to be Geller's

fourth weekend-long event over a period of two years. At the end of the event, Geller and all of the other administrator-attendees were encouraged to apply for an upgrade to their respective licenses based on the credits they had earned. Geller submitted his application for an upgrade to a PAL, despite the fact that he had never earned a BAL.

The State's licensing authority notified Geller in a letter dated May 26, 2012, that his application for advancement to the professional license was being denied. Director of Schools Miles was copied on this letter. Geller was informed that the "reason for the denial" was his lack of a qualifying beginning license and his failure to ever attempt the appropriate Praxis Series examination. The letter went on to advise Geller of the changes that took effect in 2009, whereby "educators serving as an assistant principal with more than 50% time of instructional leadership responsibilities" were required "to hold an administrator license." (R. 29-2, Geller Dep., PageID # 327). It further stated that he could no longer submit an application for a BAL because that license had since been replaced by the ILL-B. Geller was advised that he could apply for an "aspiring" administrator license, known as the "ILL-A," which would allow him to work towards earning an ILL-B while simultaneously continuing to serve in an administrative post.

One month later, on June 28, 2012, Miles met with Geller to discuss the letter and Geller's lack of an administrator's license.[3] Miles asked at this meeting whether Geller understood what requirements remained to be completed for him to become licensed. Geller responded affirmatively, noting that he was aware of the requirements, but that he believed it to be "physically impossible" for him to both complete his coursework and take the appropriate

---

[3] Miles claimed that he was unaware that Geller lacked an administrator's license until the receipt of this letter, though Geller believes that he had informed Miles of this fact prior to applying for the upgrade.

Praxis examination prior to the August 6 commencement of the new school year. (R. 29-2, Geller Dep., PageID # 296). Geller also asserted his belief that he was not required to have a license because less than 50% of his time was spent on instructional leadership.[4] It was Miles' view, however, that every assistant principal was required to obtain an administrator's license and that, in any event, all of Geller's duties as an assistant principal constituted instructional leadership. At the time, Geller was the only assistant principal in the Henry County School System that did not have a license. Miller suggested that Geller was a "liability," and dismissed out of hand the notion that Geller might be able to continue as an assistant principal without obtaining a license.

Geller was not tenured and therefore worried about the prospect that he might have no job in the coming school year.[5] Because Geller was only one year away from turning 65, the age at which he planned to retire, he hoped that Miles might waive the license requirement. Upon learning of Geller's intention to retire, Miles sought to find Geller a suitable position that he could fill for the coming year. At a later date, Miles apologized to Geller for having to remove him from his post and stated, "We probably wouldn't be having this conversation if you hadn't got that letter from [the licensing administrator] and I hadn't gotten a copy of it." (R. 29-2, Geller Dep., PageID # 305). Miles also commented on Geller's plans for retirement by noting that it was a good thing not to wait too late in life to enjoy oneself, as Miles' own father had done, in Miles' estimation. Neither Geller nor Miles discussed whether Geller would apply for

---

[4] He estimated that 40% of his time was spent doing teacher evaluations, 25% managing the lunch room, 15% was dedicated to building safety and security, 15% was occupied by collaborative teaching, another 15% was devoted to discipline, and the rest was dedicated to miscellaneous tasks, such as handling bank deposits.

[5] Geller's employment contract also acknowledged that he could be transferred to any post throughout the Henry County School System.

an ILL-A, which presumably would have allowed Geller to remain in his position; it is undisputed that Geller could have obtained the aspiring license prior to the commencement of the new school year. Geller's coworkers were of the impression that he simply chose not to get a license because he would not recoup his investment given his stated plan to retire in the near future.

The newly vacant assistant principal position went to Renae Lassiter for the upcoming school year. Lassiter was recommended for the position by another administrator in the Henry County School System who was aware that Lassiter had recently attained an ILL-B. The position was not advertised, but Lassiter only received the appointment after interviewing in competition with two other candidates. She was 39 years old at the time, and had worked as a physical education instructor in the School System the previous year.

Geller was offered a teaching position at the Alternative School. His new base salary was $10,000 less than he had previously earned as an assistant principal, but he was offered a $1,000 supplement to lessen the financial burden of his transfer.[6] Geller signed an employment contract accepting his new position at the Alternative School, but at the bottom of the page he wrote, "I believe I was wrongfully removed as Assistant Principal at Henry County High School and am signing this contract only as a matter of financial necessity." (R. 29-2, Geller Dep., PageID # 398). Prior to receiving Geller's executed contract that included this message, the Board was unaware that Geller believed his reassignment to be at all wrongful. Miles thereafter invited Geller to meet on two separate occasions in September of 2012 to discuss his objections to the transfer. On the second occasion, Miles offered Geller an additional $3,000 supplement to ease

---

[6] Geller's retirement benefits would also be negatively impacted.

any hardship, but Geller refused.[7] At neither of these meetings did Geller suggest that his removal from the assistant principal position was based on his age.

Geller submitted a formal complaint to the Board on November 7, 2012, alleging that he was illegally transferred as the result of his age, in violation of the ADEA, 29 U.S.C. § 621 *et seq.*, and the THRA, Tenn. Code Ann. 4-21-101 *et seq.* Geller explained that he had come to the conclusion that he was being treated in a discriminatory manner because his transfer was inconsistent with both his years of experience and his favorable job performance history, and because he was replaced by a woman with very little experience who was 25 years his junior. He also noted that no discussion was had with his principal as to whether or not he should be transferred and that, at one point, Miles had referred to him as "flunky." (R. 29-3, Investigation Rpt., PageID # 409). The complaint was dismissed, the administrative reviewers having found no evidence of discrimination and having determined that Geller's transfer was based entirely on his failure to maintain a license. Geller unsuccessfully appealed that decision.

This suit against the Board[8] was initiated by Geller on June 21, 2013, in the United States District Court for the Western District of Tennessee. Geller's complaint requested both compensatory damages and injunctive relief allowing him to be reinstated to his assistant principal position at the Henry County High School. In addition to the facts detailed above, Geller offered the following information as further evidence that his demotion was predicated on age-based animus: Miles admitted that he would have waived the license requirement for up to one year for a good candidate who was working toward a license; and Miles referred to Lassiter as "a good, young leader" during the interview process to find Geller's replacement. The Board

---

[7] The additional supplement was conditioned on Geller taking on increased responsibilities in assisting the principal at Alternative School.

[8] As the Director of Schools, Miles' actions are attributable to the Board.

moved for summary judgment, resting primarily on the undisputed facts, and also indicating that a number of the School System's administrators, including Miles, were in the same protected age class as Geller and had not been subject to any adverse employment actions, because each of them had earned an administrator's license. The district court granted the Board's motion. This timely appeal followed.

## DISCUSSION

### Standard of Review

We review *de novo* an appeal from an order granting summary judgment. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004). Summary judgment is appropriate only when a court can find that "viewed in the light . . . most favorable to the nonmovant, there is either complete absence of proof on the issues or no controverted issues of fact upon which reasonable persons could differ." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 488–89 (6th Cir. 2010) (internal quotation marks omitted). Courts look to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" when ruling on a summary judgment motion. Fed. R. Civ. P. 56. All reasonable inferences shall be afforded to facts in favor of the nonmoving party, *Combs*, 354 F.3d at 576–77, but a mere "scintilla of evidence" that militates against the clear weight of the record does not create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### Analysis

The ADEA prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on a claim brought under this provision, a plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180

(2009). Either direct or circumstantial evidence of age discrimination can be offered to meet the plaintiff's burden of proof. *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 723 (6th Cir. 2012). But in either case, the evidence must be probative of showing but-for causation, not merely that age was a motivating factor. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 818–19 (6th Cir. 2011). Geller does not argue that he has direct evidence of age discrimination. Accordingly, his case is reviewed under the standard for circumstantial evidence.

Circumstantial evidence is analyzed under the *McDonnell Douglass* burden-shifting framework. *Id.* at 811–12. The initial burden, which is relatively light, calls for the plaintiff to demonstrate a *prima facie* case for age discrimination. *Id.* at 812. The burden thereafter shifts to the defendant, who must offer a legitimate non-discriminatory reason for the adverse employment action in order to avoid liability. *Id.* The burden shifts back to the plaintiff once the defendant has proffered a legitimate non-discriminatory reason. *Id.* And if the plaintiff is able to demonstrate that the proffered reason for the adverse action is merely a pretext to hide the real motivation of the employer—discrimination on the basis of age—the plaintiff will succeed. *Id.*

The parties dispute whether Geller can even demonstrate a *prima facie* case of age discrimination, which is established by a showing that the plaintiff (1) was at least 40 years of age at the time of the facts giving rise to the claim, (2) suffered an adverse employment action, (3) was qualified for the position, and (4) was replaced by a younger worker. *Weatherby v. Fed. Exp.*, 454 F. App'x 480, 489 (6th Cir. 2012). There is no dispute that Geller has satisfied the first two elements of a *prima facie* case. He has also satisfied the fourth.[9] But the third is at issue because Geller cannot claim to be qualified if he was required to maintain an

---

[9] The Board disputes that Geller has satisfied the fourth element, but relies only on an alternative test which allows a plaintiff to show that he was treated differently than a similarly situated individual.

administrator's license and failed to do so.[10]  But even if Geller has established a *prima facie* case, he cannot demonstrate pretext, let alone that age was the but-for cause of the adverse employment action taken against him.

Pretext can be established by a preponderance of the evidence in any one of the following three ways: showing that "(1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008).

This case is simple because nearly all of the evidence in the record supports the conclusion that Geller was removed from his post based solely on his failure to apply for and maintain an administrator's license.  Geller suggests that the proffered reason for his removal has no basis in fact because less than 50% of his time was dedicated to instructional leadership, and therefore he was not required to have an administrator's license.  But regardless of whether Geller did or did not need the license, he cannot demonstrate pretext as a matter of law if Miles honestly believed that the license was required.  *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 286 (6th Cir. 2012).  When an employer has "reasonably relied on particularized facts that were before it at the time the decision was made . . . the burden is on the plaintiff to demonstrate that the employer's belief was not honestly held."  *Id.* at 285 (internal quotation marks omitted).  Geller has not put forward evidence to controvert the sincerity of Miles' belief, showing that the proffered reason has no basis in fact.  Nor has Geller shown that if this belief was sincerely held,

---

[10] The regulation adopted by the State of Tennessee to take effect at the beginning of the 2009 school year required that the following personnel apply for and maintain an administrator's license: "assistant principals, teaching principals, or dual assignment personnel with more than fifty percent (50%) of their responsibilities involved in instructional leadership."  Tenn. Comp. R. & Regs. 0520-02-03.02(6) (2008).

his lack of an administrator's license constitutes an insufficient basis for his removal from the assistant principal post.

Geller attempts to support his claim by noting that Miles testified that as the Director of Schools, he could have waived the license requirement for at least one year. Geller, even when viewing the facts in the light most favorable to him, has entirely misread Miles' testimony. Miles was clear in noting that the purpose of this waiver was only to allow an otherwise qualified applicant the opportunity to begin their employment in an administrative role while they were simultaneously working toward earning a license. Miles' remark that he might waive the requirement is simply a reiteration of what Geller was already told in the letter rejecting his application for an upgraded license: that he could apply for an ILL-A prior to fulfilling the requirements to be fully licensed. Geller, however, neglected to apply for or obtain his license.

Geller's second complaint, that Miles called him a liability, also fails to demonstrate that Geller was demoted on account of his age. The only evidence that relates to age in this case is Miles' commentary on the benefits of retiring before it is too late (made only in response to Geller stating his intention to retire) and the fact that Miles once referred to Geller's replacement as a "good, young leader." While these comments, read in isolation, could create a triable issue for the jury, they do not do so in this instance, where the overwhelming evidence precludes any reasonable jury from inferring that age played any role in Geller's removal from the assistant principal post. *See Tibbs v. Calvary United Methodist Church*, 505 F. App'x 508, 513–14 (6th Cir. 2012).

Geller was responsible for keeping apprised of the licensing requirements and for maintaining the appropriate license. He was aware that the regulations had changed and that some of his coworkers were seeking to get licensed prior to the new regulations taking effect. It

is undisputed that Miles was unaware, for the first two years he was Director of Schools, that Geller was unlicensed. Once Miles received a letter from the State confirming that Geller was not appropriately licensed, Miles engaged Geller to see if he could or would become licensed. Whether or not Geller actually needed the license, if Miles believed that Geller did or if Miles simply required all of his administrators to have a license to avoid any potential liability, an employment decision made on that basis is not age discrimination. That Geller was the only administrator in the County without a license provides more credibility to the non-discriminatory nature of the adverse action. Miles and the Board appear to have made reasonable attempts to accommodate Geller by finding him a new position and offering him financial stipends to lessen the impact of his transfer. Given these facts, even when viewed in the light most favorable to Geller, no reasonable jury could conclude that Geller was discriminated against on account of his age, let alone that his age was the but-for cause of the adverse employment action taken against him.

## CONCLUSION

For the reasons stated in this opinion, we **AFFIRM** the district court judgment granting summary judgment in favor of the Henry County Board of Education in this action brought pursuant to the ADEA.