NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0028n.06

Case No. 21-1237

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 18, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| STEPHEN PAPIERZ, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| BENTELER AUTOMOTIVE CORPORATION, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |

Before: GIBBONS, READLER, and MURPHY, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Facing declining sales, Benteler Automotive Corporation laid off some of its employees. One of those employees, Stephen Papierz, believed that Benteler impermissibly considered his age (57 years old) as well as his race (white) and national origin (American) when deciding to include him in the group of affected employees. He sued his former employer for discrimination in violation of federal and Michigan law. The district court granted Benteler's motion for summary judgment on all claims. We now affirm.

I.

Benteler manufactures metal products for automobiles. Anticipating a drop in sales, the company instituted a reduction in force, resulting in the termination of over 30 employees, including Papierz. In making its termination decisions, Benteler considered employees' performance appraisals, attendance, and attitude. Papierz did not fare well under those three

metrics. His overall performance was rated as "average" on his most recent formal performance appraisal. He was deemed to have poor attendance, as reflected by three recent absences. And as to his attitude, which was assessed by two production unit managers, one production unit manager observed that, "if [Papierz] got upset about something or . . . [had] to work the weekend, he would basically say this is bullshit and leave. . . . [W]e dealt with that a few times."

Papierz is a white man born in the United States. At the time of the reduction in force, he was 57 years old. It is undisputed that "[n]o one at Benteler ever spoke to [Papierz] concerning his age, race, or national origin in the context of his termination or employment." Nevertheless, following his termination, Papierz sued Benteler for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. ch. 14, and Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.*, as well as race and national origin discrimination under the Civil Rights Act, 42 U.S.C. § 1981, and the Elliott-Larsen Act. Papierz alleged that Benteler terminated him while retaining both younger employees and Burmese employees.

Benteler moved for summary judgment on the various federal and state claims—Papierz's age discrimination claims as well as his race and national origin discrimination claims. In opposition, Papierz produced an affidavit that categorized Benteler employees by race and age, assessments made by Papierz's lawyer following his review of Benteler's personnel records. Counsel "calculated the average age" of both terminated and retained employees as well as the percent of Burmese and non-Burmese employees terminated. Following briefing, the district court granted Benteler's motion. Applying the *McDonnell Douglas* burden-shifting framework, the district court held that Papierz failed to establish a prima facie case of discrimination, primarily because his statistical analysis was insufficient to show that Benteler terminated him for

2

discriminatory reasons. And even if Papierz had established a prima facie case of discrimination, the district court concluded, he failed to show that Benteler's legitimate, nondiscriminatory, performance-based reasons for terminating him were pretextual.

II.

We review de novo a district court's grant of summary judgment. *M.J. ex rel. S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 445 (6th Cir. 2021). Summary judgment for Benteler was appropriate if, after drawing all reasonable inferences in favor of Papierz, there was no genuine dispute as to any material fact and Benteler was entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 255 (1986). To create a genuine issue of material fact, Papierz must do more than present a "mere . . . scintilla of evidence in support of" his position; he must point to sufficient evidence on which a jury could reasonably find in his favor. *Anderson*, 477 U.S. at 252.

A. Both federal and Michigan law prohibit an employer from terminating an employee "because of" his age, 29 U.S.C. § 623(a)(1); Mich. Comp. Laws § 37.2202, race, or national origin, 42 U.S.C. § 2000e-2(a)(1); Mich. Comp. Laws § 37.2202; *see also* 42 U.S.C. § 1981. As Papierz relies on indirect evidence to show how those statutes were violated, we measure his claims under the familiar *McDonnell Douglas* burden-shifting framework that the Court originally adopted for Title VII claims. *See Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 589–90 (6th Cir. 2014) (ADEA and Elliott-Larsen Act); *Smith v. City of Toledo*, 13 F.4th 508, 514–15 (6th Cir. 2021) (§ 1981). Under that framework, Papierz must first establish a prima facie case that his termination was the result of impermissible discrimination, *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006), which is "heightened" where, as here, the employee was terminated as part of a reduction in force, *Geiger v. Tower Auto.*, 579 F.3d 614, 623 (6th Cir. 2009). If he does, the burden

shifts to Benteler to proffer a legitimate, nondiscriminatory reason for his termination. *Bender*, 455 F.3d at 620. And if Benteler carries its burden, the burden shifts back to Papierz to establish that Benteler's reason was pretext for discrimination. *Id.*

B. Assuming, for purposes of argument, that Papierz has established a prima facie case of discrimination, he has not shown that Benteler's proffered reason for his termination—his "poor attendance, attitude, and work performance"—was pretext. To demonstrate pretext, Papierz argues that he was more qualified than non-protected employees who were retained. For Papierz to succeed on this theory, he must show either that he "was as qualified as or better qualified than" a non-protected employee who was retained coupled with "other probative evidence of discrimination," or that his qualifications were "so significantly better than" those of retained, non-protected employees "that no reasonable employer would have chosen the latter . . . over the former." *Id.* at 626–27.

Papierz's evidence fails to establish either requirement. By and large, he selects some factors for comparison (performance appraisal scores and attendance) while ignoring another (attitude). Even accepting his assertions that he had a higher performance appraisal and fewer absences than the comparators, that does not rebut Benteler's determination that Papierz had a worse attitude than his comparators, a non-pretextual basis for his termination. *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 816–17 (6th Cir. 2011) (holding that an employer's legitimate, nondiscriminatory reason for failing to promote the plaintiff was not pretext when the plaintiff was less qualified than another candidate based on the employer's criteria); *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 510 (6th Cir. 2008) (holding that a plaintiff failed to establish pretext by comparing himself to other applicants who "lacked one or all of the qualifications that the [defendant said] were fatal to his application" because "each of the[] applicants had other qualifications that [the

plaintiff] did not have"). Papierz may disagree with Benteler's "decision to value some [criteria] . . . over others." *Cline*, 521 F.3d at 510. But for legal purposes, that disagreement is insufficient to show pretext. *Id.*; *see also Browning v. Dep't of Army*, 436 F.3d 692, 697 (6th Cir. 2006) (holding that an employer's decision to weigh particular criteria more heavily than others "is simply not sufficient to demonstrate pretext").

Papierz's other evidence of pretext fares no better. He claims that his attitude rating was "subjective" and at odds with "the objective evidence," most notably, his performance appraisals. This argument is unavailing for several reasons. As a legal matter, an employer's use of subjective criteria in a termination decision "does not raise an inference of . . . discrimination." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 269 (6th Cir. 2010); *see also id.* at 270 (finding an absence of pretext when an employee was terminated "because she seemed to present more personnel problems" than the comparator). And factually, Benteler's assessment of Papierz's attitude is not in tension with statements in his formal performance appraisal. Papierz's "attitude" rating, which was derived from his supervisors' opinions, was based on his "day-to-day attitude[]" and reflected that, on multiple occasions, when Papierz "got upset about something or . . . [had] to work the weekend, he would basically say this is bullshit and leave." His performance appraisal, on the other hand, indicated only that he "works well with everyone on the line." Suffice to say, one can be collegial with one's co-workers yet antagonistic to supervisors.

The same is true for Papierz's statistical evidence. For today's purposes, we will assume the statistical evidence in Papierz's lawyer's affidavit is admissible. That evidence reflects (1) the average age of employees considered for termination and terminated or retained, (2) the number of employees in particular age categories who were terminated and retained, and (3) the number and percent of Burmese and non-Burmese employees considered for termination and terminated.

With Benteler having offered Papierz's lagging qualifications as a legitimate, nondiscriminatory reason for his termination, this statistical evidence, however, is insufficient to establish pretext. *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1469 (6th Cir. 1990) ("By presenting evidence that [the] plaintiff was less qualified than others occupying comparable positions, the defendant[] . . . undercut[s] the importance of the plaintiff['s] statistical proof."). After all, even if statistics preliminarily indicate "that bias could have played a role in some of the decisions," that does "not tend to establish that age [or race or national origin] played a factor in any *particular* decision." *Id.* (emphasis in original). In other words, because Benteler produced evidence that Papierz was less qualified than the retained younger employees and Burmese employees due to his poor performance, attendance, and attitude, Papierz's statistical evidence is insufficient to prove that the company discriminated against him.

Finally, Papierz points to Benteler's statement that it fired two other employees (both over age 40) because they "would resist" reassignment and would "start up problems on the floor that would be bad for morale." According to Papierz, those statements reflect a "derogatory stereotype of older people being rigid and resistant to change." But that is not an obvious conclusion to draw, given that the statements themselves, on their face, have nothing to do with age. And Papierz points to no evidence that Benteler actually relied on an ageist stereotype. His argument here is entirely speculative, and thus insufficient to establish pretext. *Cf. Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002) ("[M]ere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." (citation omitted)).

\*     \*     \*     \*     \*

We affirm the judgment of the district court.