NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0159n.06

No. 12-6458

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 27, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ELAINE SCOLA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF TENNESSEE |
| PUBLIX SUPERMARKETS, INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: BOGGS, CLAY, and GILMAN, Circuit Judges.

BOGGS, Circuit Judge. Plaintiff Elaine Scola ("Scola" or "Plaintiff"), a cashier at the Publix supermarket in Ooltewah, Tennessee, filed a complaint on April 20, 2011, alleging that Publix Supermarkets, Inc. ("Defendant") discriminated against her on the basis of her age by not promoting her from her position as cashier to the position of either administrative coordinator or customer-service staff ("CSS"), in violation of Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623; the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101; and 42 U.S.C. § 1981. Plaintiff also asserted a "hostile work environment" claim and claims for intentional and negligent infliction of emotional distress. Following discovery, Defendant

1

moved for summary judgment. The district court dismissed Plaintiff's § 1981 and Title VII claims, and Plaintiff does not appeal their dismissal. The district court also granted summary judgment on the age-discrimination claims with respect to the administrative-coordinator position, which Plaintiff does not contest on appeal. Finally, the district court granted summary judgment on the age-discrimination claims with respect to the CSS position, granted summary judgment on Plaintiff's hostile-work-environment claims, and dismissed Plaintiff's remaining state-law claims, declining to exercise jurisdiction over those claims, which decisions Plaintiff now appeals. We affirm the judgment of the district court.

## I

Plaintiff Elaine Scola was hired as a part-time cashier at the Publix supermarket in Ooltewah, Tennessee on November 15, 2008. At the time she was hired, Plaintiff was 56 years old. Prior to working at Publix, Plaintiff was owner and manager of a family-run business from 1985 to 2003. Plaintiff's cashier duties included making correct change, ringing up customers, bagging groceries, and assisting customers in finding groceries. Cashiers also had some "front office" duties such as making refunds and giving customers money orders.

In December 2008, Plaintiff submitted a Registration of Interest ("ROI") form indicating that she was interested in a CSS or administrative-coordinator position. She submitted a new form approximately every six months after submitting her initial request. The cashier, administrative-coordinator, and CSS positions are all hourly, non-management positions.

The CSS position involves some work at the front office, including handling customer questions, ringing up and scanning groceries, and selling lottery tickets. A CSS employee may also act as a "front end coordinator." According to Plaintiff, the front-end coordinator coordinates breaks, assigns registers to incoming employees, ensures that the shopping carts are

2

brought inside, ensures that associates get their breaks, and assigns nightly tasks to associates. CSS employees can also perform certain cash-handling tasks that cashiers cannot perform. Although Plaintiff has had opportunities to perform some of the front-office and front-end-coordinator tasks, a number of those tasks are not part of the cashier job description.

Since Plaintiff submitted her first ROI form, Rachel Barnes, Gina Saches, Heather Borges, and Kelly Simpson were placed in the CSS position at the Ooltewah store. Rachel Barnes, Gina Saches, and Heather Borges changed positions from cashier to CSS during or slightly after June 2009. Kelly Simpson changed positions from cashier to CSS near the end of 2009.

Other individuals who worked at the Ooltewah store in the CSS position since Plaintiff submitted her ROI form included Marcia Trumbull, Nicole Pendergrass, Angela Anderson, and James Cordell. Marcia Trumbull previously worked for Publix as a CSS and was rehired into the CSS position in November 2009. Nicole Pendergrass returned to the CSS position in March 2009, after having previously worked as a CSS when the store opened in 2008. Finally, James Cordell and Angela Anderson transferred from Publix stores in Georgia and Florida to the Ooltewah store, in June and July 2010, respectively. Both worked in the CSS position prior to their transfer.

According to Plaintiff, the administrative coordinator helps train new associates and monitors a computer-training program. The Ooltewah store has only one administrative coordinator, Ginger Teems, who held this position from the time that the store opened to the time that Plaintiff filed her complaint.

The parties dispute Plaintiff's work-performance record. Plaintiff received regular evaluations as an employee at Publix. Her evaluation scores show that she met store

3

expectations. Defendant contends that a score of "meets expectations" is an "average" rating. In the written comments section of Plaintiff's evaluations, management highlighted her strengths as well as areas where she needed improvement. Plaintiff received a few awards from management for her customer service, though Defendant also claims that it had some problems with Plaintiff's interactions with customers and fellow employees. According to Defendant, Plaintiff's availability to work changed often while she worked at the Ooltewah store. Plaintiff offers evidence showing that all of her "time away from work" requests were granted.

Plaintiff presents evidence that various managers either ignored her when she sought help on the job or treated her disrespectfully. She also notes that Isaiah Hall, an assistant manager at the store, referred to her as an "old lady" on a few occasions. Plaintiff complained to Steve McConnell in human resources at Publix on February 1, 2010, and again on later dates, expressing her frustrations with the job. Plaintiff received front-office training in March 2010 but never received a promotion. No employee was put in the CSS position or transferred into the position of CSS at the Ooltewah store from July 2010 until the time Plaintiff filed her complaint.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and the Tennessee Human Rights Commission on approximately July 30, 2010. On April 20, 2011, Plaintiff filed her complaint against Defendant in district court. Following discovery, the district court granted Defendant's motion for summary judgment.

## II

Plaintiff raises four issues on appeal. First, Plaintiff argues that the district court applied the wrong summary-judgment standard to Plaintiff's claims under the THRA. In particular, Plaintiff asserts that the court should not have applied the *McDonnell Douglas* burden-shifting framework to Plaintiff's state-law discrimination claims. Second, Plaintiff argues that the district

4

court erred in granting summary judgment with respect to Plaintiff's ADEA and THRA claims. In particular, Plaintiff argues that the court erred in finding a) that a seven-year age difference between Plaintiff and another employee was not significant under the circumstances, b) that Plaintiff did not have qualifications similar to those of the employees promoted in her stead, and c) that Plaintiff failed to offer evidence indicating that Defendant's proffered reasons for its employment decisions were pretextual. Third, Plaintiff argues that the district court erred in granting summary judgment with respect to her hostile-work-environment claims, arguing that Plaintiff was not given notice and an opportunity to be heard on those claims. And fourth, Plaintiff claims that the district court erred in dismissing Plaintiff's remaining state-law claims.

### III

We review the district court's legal conclusions de novo, including its grant of summary judgment. *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563, 565 (6th Cir. 2005). We review its decision not to exercise supplemental jurisdiction for an abuse of discretion. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010).

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). When sitting in summary judgment, a court must draw all justifiable inferences from the evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

5

**A**

Plaintiff's first point of error is that the district court incorrectly applied the *McDonnell Douglas* burden-shifting framework to Plaintiff's state-law discrimination claims at summary judgment. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As explained more fully below, under that framework, a plaintiff must first make out a prima facie case of discrimination. If she does so, the burden of production shifts to the employer to offer legitimate, non-discriminatory reasons for its actions. If the employer meets this burden, the burden then shifts back to the Plaintiff to show that the reasons proffered by the employer were pretextual. Plaintiff argues that, in view of a 2010 Tennessee Supreme Court decision, applying the *McDonnell Douglas* framework to Plaintiff's age-discrimination claims at the summary-judgment stage is inconsistent with Tennessee state law. *See Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777, 779 (Tenn. 2010) (holding "that the *McDonnell Douglas* framework is inapplicable at the summary judgment stage because it is incompatible with Tennessee summary judgment jurisprudence").

Defendant correctly notes that *Gossett* has been abrogated by statute in relevant part. *See, e.g.*, *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 758 (6th Cir. 2012) (noting that "an amendment to Tenn. Code Ann. § 4–21–311(e) . . . appears to abrogate *Gossett* . . . and require the continued application of the *McDonnell Douglas* framework in THRA cases."); Tenn. Code Ann. § 4–21–311(e); *see also Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 543 (6th Cir. 2012) (observing that "the Tennessee legislature abrogated *Gossett* by statute"). But the amendment abrogating *Gossett* did not take effect until June 10, 2011. *See* Tenn. Code Ann. § 4–21–311(e). The question therefore arises as to which standard applies to Plaintiff's case, which was filed before the statutory amendment's effective date, but

6

decided afterward. By its terms, the statutory amendment "shall take effect upon becoming a law, the public welfare requiring it and shall apply to all causes of action accruing on or after such effective date." Act of June 10, 2011, ch. 461, 2011 Tenn. Laws 107 (enacting a burden-shifting framework for evaluating discrimination and retaliatory-discharge claims, including at the summary-judgment stage); *see also Skaan v. Fed. Exp. Corp.*, W2011-01807-COA-R3CV, 2012 WL 6212891 at *4 n.4 (Tenn. Ct. App. Dec. 13, 2012) (observing that the new standard "only appl[ies] to cases filed [*sic*] on or after June 10, 2011"). Since Plaintiff's cause of action in this case accrued (and was filed) before the statutory amendment took effect, the amendment does not apply to Plaintiff's claims.

Nevertheless, the question remains whether the district court should have applied the state-law summary-judgment standard, as articulated in *Gossett*, to Plaintiff's state-law age-discrimination claims. "It is a long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (Stevens, J., concurring) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). But "[w]hen both a federal rule and a state law appear to govern a question before a federal court sitting in diversity," federal courts apply a "two-step framework" to determine which law controls. *Id.* at 421. The framework "requires first, determining whether the federal and state rules can be reconciled (because they answer different questions), and second, if they cannot, determining whether the Federal Rule runs afoul of [the Rules Enabling Act, 28 U.S.C.] § 2072(b)." *Id.* at 410. Briefly, "[i]n the Rules Enabling Act, Congress authorized [the Supreme] Court to promulgate rules of procedure subject to its review, 28 U.S.C. § 2072(a), but with the limitation that those rules 'shall not abridge, enlarge or modify any substantive right,' § 2072(b)." *Id.* at 406–07.

*Shady Grove* was a plurality opinion, and Justice Stevens's concurrence was necessary to the final judgment. Where the plurality and Justice Stevens differed was in their application of step two of the aforementioned framework for determining whether state or federal law controls in a given case. According to the *Shady Grove* plurality, if there is a valid Federal Rule of Civil Procedure on point, a federal court sitting in diversity must apply the Federal Rule, "regardless of its incidental effect upon state-created rights." *Id.* at 410. To determine whether a rule comports with the requirements of the Rules Enabling Act, the plurality focuses on the nature of the rule itself—whether "it really regulates procedure"—rather than on the case-by-case effects of its application to state-law claims. *Id.* at 411. According to Justice Stevens's concurrence, in contrast, the question is not whether the federal rule is procedural, but rather, whether "the state law it displaces is procedural, in the sense that it does not 'function as a part of the State's definition of substantive rights and remedies.'" *Id.* at 411 (quoting Justice Stevens's concurrence, at 416–17).

We hold that, under either approach, the summary-judgment standard articulated in *Gossett* has no application in federal court. To arrive at this conclusion, we first ask whether the federal and state rules conflict. Here, the federal rule on point is Federal Rule of Civil Procedure 56, which governs summary judgment. As stated, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine the meaning and scope of the federal rule, we look to the precedents of the Supreme Court and our court interpreting and applying the rule. For discrimination claims, "[o]n a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th

8

Cir. 2000); *see also Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 818 (6th Cir. 2011) (expressly considering evidence at all stages of the *McDonnell Douglas* inquiry to determine whether plaintiff had established a genuine issue of material fact in connection with her age-discrimination claim). The state law is the standard articulated in *Gossett*, which held "that the *McDonnell Douglas* framework is inapplicable at the summary judgment stage because it is incompatible with Tennessee summary judgment jurisprudence." *Gossett*, 320 S.W.3d at 785. Instead, under Tennessee law, which has "rejected the federal standard set forth in *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)," the moving party must "affirmatively negate" an essential element of the nonmoving party's claim. *Gossett*, 320 S.W.3d at 793 (Clark, J., concurring); *id.* at 782. To be clear, the Tennessee Supreme Court did not reject the *McDonnell Douglas* framework outright; rather, it held that, because the burden-shifting framework may, in its view, "result in trial courts disposing of factual questions on summary judgment," the framework should not be applied at the summary-judgment stage. *Id.* at 783, 786. Given the Tennessee Supreme Court's express rejection of the federal summary-judgment standard, it is clear that state and federal law conflict.

The second step of the inquiry is to determine whether the federal rule, or the application of the federal rule, comports with the requirements of the Rules Enabling Act. There can be no doubt that Rule 56 of the Federal Rules of Civil Procedure is a procedural rule. As we have explained, "summary judgment is a procedural device for deciding a case without the necessity of a full-blown trial. When there is a motion for summary judgment in a diversity case, the provisions of Rule 56 control its determination." *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 574 (6th Cir. 2008) (citations and internal alteration marks omitted). This rule applies "even where the federal summary judgment requirements displace state law that would require a

jury to make a particular determination." *Id.* To be sure, whether the *McDonnell Douglas* framework is itself purely procedural, and whether it would constitute a "federal rule" under the Rules Enabling Act, are both difficult questions. But we need not resolve them here, because the conflict with Tennessee law does not concern the *McDonnell Douglas* framework itself—i.e. its content, and whether it should be used to evaluate substantive claims of discrimination; rather, the conflict arises over timing—i.e. *when* the framework applies and *when* the evidence thereunder may be considered. Under Rule 56 of the Federal Rules, as applied, all evidence relevant to the *McDonnell Douglas* inquiry is considered at summary judgment, and a plaintiff must use that evidence to show that a genuine dispute of material fact exists. Since this rule "really regulates procedure" (it governs the evidence that may be considered at summary judgment and the burdens on the parties), it is a valid rule under the Rules Enabling Act. For the plurality in *Shady Grove*, then, the inquiry would end here, and application of the *McDonnell Douglas* framework to Plaintiff's claims at summary judgment would be proper.

Under the view advanced by Justice Stevens in his concurrence, however, we must focus on the nature of the state law, not on the nature of the federal rule, to determine whether displacing that law would effectively "abridge, enlarge, or modify" a substantive right under state law. If so, applying the federal rule would not comport with the dictates of the Act. Here, however, it is clear that the standard articulated in *Gossett* is procedural in nature. First, just as with the federal rule, the standard articulated in *Gossett* "allocate[s] decision-making authority between the judge and jury, a quintessentially procedural determination." *See Shropshire*, 550 F.3d at 573. Second, the fact that its express aim was to displace the federal summary-judgment standard also indicates that it is procedural. *See id.* And finally, *Gossett* did not alter any of the elements of an age-discrimination claim under state law. *See Webb v. ServiceMaster*

10

*BSC LLC*, 438 F. App'x 451, 453 n.2 (6th Cir. 2011) (noting that "*Gossett* did not alter the elements required to prove employment discrimination."). In fact, the *Gossett* court appears to have expected federal courts to continue to apply the *McDonnell Douglas* framework to state-law discrimination claims on summary judgment just as it had done in the past. *See Gossett*, 320 S.W.3d at 794 n.4 (Clark, J., concurring) (noting that "[d]efendants will . . . continue to be able to obtain summary judgment in federal court on grounds that are foreclosed by the majority opinion). Since *Gossett* announces a procedural standard, the application of the federal summary-judgment standard would not "abridge, enlarge or modify" substantive rights under state law. Therefore, the federal summary-judgment standard would also supersede *Gossett* under Justice Stevens's approach.

Since the conflicting federal rule comports with the requirements of the Rules Enabling Act under either approach, the district court was correct to apply the federal summary-judgment standard when evaluating Plaintiff's state-law claims.

**B**

Plaintiff's second argument is that the district court erred in finding that Defendant was entitled to summary judgment on Plaintiff's age-discrimination claims under the ADEA and THRA. Again, we review the district court's decision de novo.

The requirements for establishing an age-discrimination claim under the THRA are the same as under the ADEA. *See Jones v. Memphis Light, Gas, & Water Div*., 346 F. App'x 38, 43 (6th Cir. 2009); *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006) ("We apply the same analysis to age-discrimination claims brought under the THRA as those brought under the ADEA."). To prove age discrimination, a plaintiff must establish a violation by either direct evidence or circumstantial evidence. *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir.

11

2009). Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's action." *Id*. (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)). By contrast, circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id*. Whether by direct or indirect evidence, a plaintiff must prove "age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177–78 (2009).

To advance a discrimination claim using circumstantial evidence, a plaintiff must satisfy the requirements of the burden-shifting framework set forth in *McDonnell Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff must first make out a prima facie case by showing: "(1) she is a member of the protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied." *Provenzano*, 663 F.3d at 812–13. The plaintiff's burden at the prima facie stage is not onerous. *Id*. at 813 (citations and internal quotation marks omitted). Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for not promoting the plaintiff. *Id*. at 814. Finally, after the defendant offers its explanation, the burden of production shifts back to the plaintiff to demonstrate that "the employer's proffered nondiscriminatory reason was not the true reason for the employment decision, but rather a pretext for discrimination." *Id*. at 815. Whereas "the burden of *production* shifts between litigants as the analysis advances," "the ultimate burden of persuasion remains on

12

the plaintiff to demonstrate that age was the 'but-for' cause of their employer's adverse action."
*Id* at 812 (emphasis in original).

The district court found that Plaintiff satisfied the first element of her prima facie case—that is, she was in the protected class because of her age. The court also found that Plaintiff arguably put forth sufficient evidence to show genuine factual disputes as to the second and third elements—i.e. that the position she applied for was a promotion for which she was qualified (element two), and that she was considered for and denied the promotion (element three). But the court found that Plaintiff failed to show that a genuine dispute existed as to the fourth element, which requires that another employee with similar qualifications who was not a member of the protected class receive the promotion at the time that Plaintiff's request for the promotion was denied.

On this fourth element, the district court first ruled that Plaintiff's claims were time-barred with respect to all but five of the employees allegedly promoted to CSS positions in Plaintiff's stead. *Scola v. Publix Super Markets, Inc.*, 902 F. Supp. 2d 1083, 1092 (E.D. Tenn. 2012). The remaining claims were: 1) Plaintiff's ADEA claim that Plaintiff should have been promoted in lieu of Marcia Trumbull, Nicole Pendergrass, Angela Anderson, James Cordell, and Kelly Simpson; and 2) Plaintiff's THRA claim that Plaintiff should have been promoted in lieu of Cordell or Anderson. *Id.*

Of the five remaining employees whose alleged promotions were at issue, two were also members of the protected class, namely, Trumbull and Simpson. The court concluded that the seven-year age difference between Trumbull, who was born in 1959 (age 50 at the relevant time), and Plaintiff, who was born in 1952 (age 57), was "unlikely to be significant," noting that Plaintiff "ha[d] not offered direct evidence of age animus." *Id*. at 1093. Accordingly, the court

13

dismissed Plaintiff's claim in connection with Trumbull's promotion. The court then found that Plaintiff failed to show that she had qualifications similar to those of any of the other four employees, and that even had she done so, she failed to offer any evidence showing that Defendant's reasons for making those employment decisions were pretextual. The court therefore dismissed what remained of Plaintiff's ADEA and THRA claims.

On appeal, Plaintiff does not appear to contest the dismissal of the time-barred claims. Plaintiff does, however, contest the dismissal of her claims with respect to the alleged promotions of the five employees mentioned above. Plaintiff also argues that the district court erred in not considering Plaintiff's claims with respect to three additional employees—Maria Riojas, Shannon Chisefsky, and Jamey Greene.

Whether the district court's grant of summary judgment was proper thus depends on whether a reasonable jury could have found 1) that the seven-year age difference between Plaintiff and Trumbull was significant under the circumstances, 2) that Plaintiff and the remaining four employees were similarly qualified, and, if so, that Defendant's proffered reasons for its promotion decisions were pretextual, or 3) that Plaintiff had viable claims with respect to the alleged promotions of the three additional employees that the district court did not consider. As explained below, we find that Plaintiff cannot show that a genuine dispute of material fact exists in connection with any of these issues.

**1**

As the district court observed, "It is well established in this circuit that 'in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant.'" *Scola*, 902 F. Supp. 2d at 1093 (citing *Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003)). On the other

14

hand, "an age difference of ten or more years is generally considered significant." *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 284 (6th Cir. 2012) (citing *Grosjean*), *cert. denied*, 133 S. Ct. 2359 (2013). As we observed in *Blizzard*, what remains is essentially a gray area, such that "replacement of the employee by a person who is six to ten years her junior must be considered on a case-by-case basis." *Id*. The district court concluded that, "taking into account both the seven-year age difference between Plaintiff and Ms. Trumbull as well as the fact that Plaintiff has not offered direct evidence of age animus, . . . Plaintiff's prima facie case fails with respect to Ms. Trumbull." *Scola*, 902 F. Supp. 2d at 1094.

Plaintiff argues that, because an age difference of six years or less is not significant (absent other evidence), "any difference of more than six years is significant under *Grosjean*." Appellant's Br. at 23. But that is not what *Grosjean* says. Rather, as we explained in *Blizzard*, an age difference between six and ten years may or may not be significant, depending on the circumstances of the case.

Here, the district court determined that, aside from the seven-year age difference, the only evidence of discrimination consisted of comments made by another employee, Isaiah Hall, calling Plaintiff an "old lady." As the court observed, "Those statements are insufficient because Mr. Hall was not a decisionmaker with respect to CSS promotions nor were his statements related to the decisionmaking process." *Scola*, 902 F. Supp. 2d at 1097 n.4. Under the circumstances, the district court reasonably concluded that the seven-year age difference in this case, without more, was not significant, and was not enough to give rise to an inference of discrimination in the eyes of a reasonable factfinder. Therefore, the court's grant of summary judgment on the ADEA and THRA claims with respect to Trumbull's appointment was proper.

## 2

The district court dismissed Plaintiff's claims with respect to the four other employees whose promotions are at issue (Pendergrass, Anderson, Cordell, and Simpson) on the ground that Plaintiff failed to show that she and the four other employees were similarly qualified. In particular, the district court held that there was no genuine issue as to whether Plaintiff lacked the experience that the others possessed:

> Mr. Simpson not only was in the protected class but he also possessed additional "front office" training and experience—a key part of the CSS position—that Plaintiff had not received at the time the position was filled. Mr. Cordell and Ms. Anderson had previously worked in the CSS position—the position that Plaintiff was seeking—before being transferred to the Ooltewah store. Finally, Ms. Pendergrass was a customer service team lead, another position at Publix that has greater responsibilities than the cashier position, and had previously worked as a CSS when the store first opened. Thus, although Plaintiff satisfied the minimum qualifications for the CSS position and offers evidence of satisfactory performance evaluations as cashier, she has not sufficiently demonstrated she was similarly qualified to the other individuals who were promoted to the CSS position at the time those positions became available.

*Scola*, 902 F. Supp. 2d at 1094. Given Plaintiff's relative lack of experience, the district court held that Plaintiff had failed to meet the fourth element of her prima facie case with respect to these four employees.

Plaintiff argues that the court erred in finding that she did not satisfy this fourth element. In particular, Plaintiff argues that she was "only required to show that she was qualified for the position and that Defendant selected a younger person for the position." Appellant's Br. at 26–27. Plaintiff emphasizes that "the fact that another applicant was more qualified or overly qualified for the position is not relevant in determining whether Plaintiff was qualified for the position for purposes of meeting the requirements of a prima facie case of discrimination." *Id.* at 27.

16

Plaintiff misstates the law. Perhaps Plaintiff is conflating the requirement for the fourth element in a discharge case (which this case is not) with that in a failure-to-promote case (which this case is): in a failure-to-promote case, Plaintiff must show not only that she was qualified, but that she was *similarly* qualified to the employees who were promoted in her stead. *See, e.g., Provenzano*, 663 F.3d at 814 ("In a failure to promote claim, the emphasis in the fourth element is on the relative qualifications of the plaintiff and the employee who actually received the promotion."). Plaintiff emphasizes that she met the minimum qualifications for the position; namely, that she was above the age of eighteen and had cashiering experience. But Plaintiff's burden, though not "onerous" at the prima facie stage, is still to show that she was *similarly* qualified. We impose this requirement for good reason: if a plaintiff in a failure-to-promote case could make out a claim despite being less qualified than the candidate chosen, we would be setting the bar too low, and a statute meant to prevent discrimination against older persons would end up encouraging discrimination in their favor. Therefore, to allow a factfinder to reasonably infer that discrimination was afoot, we require Plaintiff to show that she was at least as qualified as the candidate chosen in her place.

The district court found, and Plaintiff does not dispute, that all four of the employees at issue either had prior experience in the position she sought or had experience critical to that position, whereas Plaintiff had none at the relevant time. Plaintiff does not argue that the prior experience of these other employees did not help them do their jobs better. Nor does Plaintiff argue that she had other qualifications, such as superior performance reviews or other experience, that made her similarly qualified. Instead, Plaintiff argues that these other employees' additional experience is irrelevant because the decisionmaker, Mr. Walker, "never claimed that this was the reason the Plaintiff was not promoted." Appellant's Br. at 27.

Plaintiff's claim that relative experience played no role in the decisionmaking process—and therefore did not render her less qualified—is not supported by the record. Plaintiff claims that "Walker stated that the reason he has not given Plaintiff a CSS position is primarily a matter of availability." *Id.* at 25. First, a candidate's "availability" can reasonably be considered part of her qualifications for the position, particularly here, where, as Walker testified, Plaintiff "[didn't] seem to like to work holidays, which is [Publix's] busiest times [*sic*]," and previously "didn't want to work weekends." Second, Walker did not testify that that was the only reason she was not promoted. For example, Walker testified that he chose Ms. Trumbull because "[s]he had previous experience as customer service staff with Publix." When asked why he chose a different employee, Heather Borges, over Plaintiff, Walker responded that Borges "already had prior office experience from [the] Florida [store]." [1] Thus, Plaintiff's claim that her relative inexperience did not render her less qualified is unfounded.

Like the district court, we are skeptical that a fair-minded jury could find that Plaintiff and these other four employees had similar qualifications. [2] But even giving Plaintiff the benefit of the doubt as to the value of prior CSS or related experience (which Plaintiff lacked), we agree with the district court that Plaintiff could not show that Defendant's proffered reasons for its promotion decisions were pretextual. Accordingly, we affirm the district court's dismissal with respect to these four employees' appointments on that basis.

---

[1] Plaintiff's claim with respect to Borges is time-barred, but Walker's testimony makes clear that experience played a role in his evaluation of candidates.

[2] The district court held that a reasonable factfinder would be "unlikely" to conclude Plaintiff was similarly qualified. *Scola*, 902 F. Supp. 2d at 1094. As the district court observed at the outset, however, the standard for granting summary judgment is whether a reasonable jury *could* find for the non-movant. *Id.* at 1090. This appears to be what the district court intended. Regardless, we do not decide whether a reasonable jury could so find because we affirm on other grounds.

18

Even if a reasonable jury could conclude that Plaintiff made out a prima facie case of discrimination, it would also have to conclude that Defendant's proffered reasons for its promotion decisions were pretextual. "A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Provenzano*, 663 F.3d at 815 (citations and internal quotation marks omitted). "Relative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains other probative evidence of discrimination." *Id.*

Here, Defendant offered numerous legitimate, non-discriminatory reasons for its employment decisions. Again, the four employees whose promotions remain at issue are Anderson, Cordell, Simpson, and Pendergrass. Defendant explained that both Cordell and Anderson were already working in CSS positions in stores in other states when they were allowed to transfer to the Ooltewah store for personal reasons, despite the absence of an opening or a need in the Ooltewah store. The decisionmaker, Mr. Walker, did not seek out these employees, and did not appear to have a role in their transfer to the store. Plaintiff cannot be said to have been "considered for" and "denied" these positions, which were not promotions at all, but rather, were transfers that allowed these employees to "maintain[ ] their status." Moreover, Plaintiff points to no evidence casting doubt on Defendant's explanations for these transfers.

Defendant explained that Simpson was promoted because of Simpson's superior job performance and better availability. Walker testified: "Kelly [Simpson] was outstanding. Kelly

19

would work in any department I needed Kelly to work in. . . . He was available to work any time. . . . [Plaintiff] was not available to work any time." Plaintiff offers no basis for questioning Defendant's explanation for deciding to promote Simpson instead of Plaintiff. Plaintiff cannot show that she was "a plainly superior candidate." And, even assuming that she was as qualified as Simpson, Plaintiff cannot point to any probative evidence of discrimination in the record besides the stray "old lady" comments of an employee, Isaiah Hall, who, as mentioned, played no role in the decisionmaking process. Plaintiff offers nothing that would permit a reasonable jury to conclude that Defendant's proffered reasons for promoting Simpson over Scola were pretextual.

Finally, Defendant explained that Pendergrass was hired into a CSS position when the store first opened. Prior to working for Publix, she was the store manager at Food Lion, another supermarket. Pendergrass was promoted to Customer Service Team Leader and stepped back down at her own request. Again, it is doubtful whether Plaintiff can reasonably claim to have been considered for and denied a promotion on these facts, but even were she able to do so, Plaintiff has offered no reason to doubt Defendant's explanations.

Since Defendant offered legitimate, non-discriminatory reasons for its decisions, Plaintiff had the burden of showing that these reasons were pretextual. Plaintiff failed to discharge her burden with respect to Simpson's promotion, and similarly failed to discharge her burden with respect to the other three employees' alleged promotions.

**3**

Plaintiff claims that the district court also erred in not considering three additional employees in connection with Plaintiff's age-discrimination claims: Riojas, Chisefsky, and Greene. The district court did not err. Plaintiff does not allege or point to evidence showing that

20

Riojas was actually promoted to the CSS position; on the contrary, Plaintiff admitted that Riojas, like Plaintiff, remained a cashier. Plaintiff thus cannot satisfy the fourth element of her prima facie case with respect to Riojas. Plaintiff also admits that Chisefsky and Greene did not actually work in her store, and Plaintiff identifies no basis from which to conclude that Plaintiff was considered for and denied the promotions they received. Plaintiff thus cannot satisfy the fourth element of her prima facie case with respect to these employees, either. Accordingly, Plaintiff's claims with respect to these three employees provide no basis for reconsidering the district court's grant of summary judgment.

## C

Plaintiff also argues that the district court erred in granting summary judgment on Plaintiff's hostile-work-environment claims. According to Plaintiff, Defendant did not seek to dismiss these claims in its motion for summary judgment, so Plaintiff was not on notice that she needed to respond with a defense of these claims and, therefore, Plaintiff did not have an opportunity to be heard on these claims.

First, Defendant correctly notes that it moved for summary judgment with respect to all of Plaintiff's claims, not just the age-discrimination claims under the ADEA and THRA. Appellee's Br. at 39. Thus, even though Defendant's memorandum in support of that motion focused only on Plaintiff's age-discrimination claims, Plaintiff should have been aware that she needed to point to evidence in support of all of her claims. Indeed, in federal court, Defendant's burden at the summary-judgment stage is not to actively disprove Plaintiff's case. "Instead, as we have explained, the burden on the moving party"—here, Defendant—"may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The nonmoving party—that is,

21

Plaintiff—must then "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citations and internal quotation marks omitted). Plaintiff failed to discharge her burden with respect to the hostile-work-environment claims and, on appeal, Plaintiff does not point to any evidence that would suggest that she would have been able to support her hostile-work-environment claims had she understood that the claims were subject to dismissal.

Even if we take Plaintiff's lack-of-notice plea at face value, however, we affirm the district court's grant of summary judgment in this case because her claims would fail regardless. To advance a prima facie hostile-work-environment claim under the ADEA or THRA, an employee must show that: (1) the employee is 40 years old or older; (2) the employee was subjected to harassment, either through words or actions, based on age; (3) the harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996). In particular, we note that Plaintiff must show that she was harassed on the basis of her age and that such harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 835 (citations and internal alteration marks omitted).

Plaintiff is correct that her age-discrimination and hostile-work-environment claims have different elements. But the evidence required to prove each type of claim overlaps in critical respects. In particular, in advancing her age-discrimination claims, Plaintiff pointed to the "old lady" comments of Mr. Hall, which, standing alone, cannot reasonably be said to have created

22

"an objectively intimidating, hostile, or offensive work environment." To be sure, harassment is not the same as discrimination in an employment decision, and evidence of one may not be evidence of the other. But as her repeated references to Mr. Hall's comments indicate, Plaintiff did not limit herself to evidence strictly related to discrimination in advancing her discrimination claims. As a result, and in light of the fact that Plaintiff continues to point to no other evidence of harassment on appeal, it is doubtful that any such evidence exists. Accordingly, we affirm the district court's grant of summary judgment on Plaintiff's hostile-work-environment claims.

**D**

Finally, Plaintiff argues that the district court should not have declined to exercise jurisdiction over her remaining state-law claims, including her claims of intentional and negligent infliction of emotional distress. Appellant's Br. at 52.

A district court's decision not to exercise supplemental jurisdiction to hear a plaintiff's state-law claims is an appealable decision that we review under the abuse-of-discretion standard. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010). "An abuse of discretion exists only when the court has the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011). "In determining whether to exercise supplemental jurisdiction, federal courts balance the values of judicial economy, convenience to parties, fairness, and comity to state courts." *Id.*

"When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Gamel*, 625 F.3d at 952. Although "[t]here are . . . circumstances where a district court should retain supplemental jurisdiction even if all of the underlying federal claims have

been dismissed," *see id*, mere inconvenience to the plaintiff is, by itself, generally insufficient. *See Packard*, 426 F. App'x. at 585.

We disagree with Plaintiff's claim that the relevant factors weigh in favor of jurisdiction in this case. Judicial economy does not favor exercising jurisdiction over the state-law claims. As in *Packard*, "the parties ha[ve] not exerted substantial time or effort in briefing the merits of the state law causes of action"; rather, their briefing has focused exclusively on the federal cause of action—Plaintiff's ADEA claim—and its state counterpart under the THRA. Had the district court declined to exercise jurisdiction over the THRA claim, for example, such a decision might have been erroneous, since the state and federal age-discrimination causes of action are virtually identical. But the district court properly disposed of the THRA claim. To be sure, permitting the remaining state-law claims to go forward in state court instead of keeping them in the district court might increase costs and proceedings and require a new judge to become familiar with the facts. But Plaintiff does not point to any unusual additional costs that she will incur or difficult circumstances that she will face as a result of dismissal that would distinguish her situation from that of the typical plaintiff whose state-law claims are dismissed following the disposition of her federal claims. Accordingly, after balancing these factors, we cannot say that we have a firm conviction that the district court erred in declining to exercise supplemental jurisdiction over Plaintiff's state-law claims.

## IV

For the foregoing reasons, we AFFIRM the judgment of the district court.

24