NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0433n.06

Case No. 13-6416

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
*Jun 13, 2014*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TERESA E. BANKS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| ARGOS RISK MANAGEMENT SERVICES, | ) | TENNESSEE |
| LLC, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: SUTTON and GRIFFIN, Circuit Judges; SARGUS, District Judge.[*]

SUTTON, Circuit Judge. Argos Risk Management Services fired Teresa Banks after learning that her work history was not what she claimed it was. In response, Banks filed a wrongful-termination claim under Tennessee common law. The district court granted summary judgment to Argos. We affirm.

I.

Argos is a third-party administrator of workers' compensation claims. After working for almost a year as a claims adjustor at Argos, Banks was allegedly injured at work. What her injury was and how it happened remain something of a mystery. According to Banks, an

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

overhead filing cabinet door fell on her hand, and sometime down the road a doctor recommended that she undergo reconstructive shoulder surgery.

Banks filed a workers' compensation claim, and Argos did what it normally does for others but now did for itself: It investigated the claim. The investigation raised several "red flags." R. 18-7 at 8. No one saw Banks get injured. After the accident, Banks told her supervisors that she was okay, but nonetheless asked for information as to how she could file a workers' compensation claim. The next day she submitted a workers' compensation form. When an Argos investigator attempted to reenact the injury using an "identical" filing cabinet, she could not do so. *Id.* at 9.

More digging uncovered more red flags. Argos ran an "Index Report" of Banks' social security number and found that she had filed at least eight workers' compensation or general liability claims against previous employers. A cross-check of these claims against Banks' job application revealed that she had been less than forthcoming with her Argos interviewers. The claims showed that Banks had recently worked for a company called "Dawg, Inc.," for example, but Banks had not listed this company in the employment-history section of her application. *Id.* at 11.

Résumé omissions were not Banks' only problem. She also had embellished the history that *did* appear on her application. Argos found that Banks had filed for bankruptcy in 2010 and had listed her employer as "Genco Distributing System," but this information did not match Banks' résumé, which said that Banks was an employee of the State of Tennessee during that period. *Id.* at 13. And, perhaps most importantly, when Banks applied to Argos, she claimed to have seven years of experience with "American International Group" as a "worker's

2

compensation disability specialist." *Id.* at 16; R. 18-3 at 4. But that was not true. Banks was an entry-level "clerk" with AIG, not a specialist of any kind, R. 18-7 at 16, and she worked at AIG for two years, not seven.

Argos fired Banks on March 5, 2012, almost four months after her alleged injury at work. As Argos saw things, Banks had lied on her employment application and could not be trusted. On top of that, the lies indicated that she did not have the requisite employment experience to serve as a claims adjustor. The job demanded "five . . . years continuous employment in a position responsible for the overall handling of workers' compensation claims," R. 18-3 at 2, and Banks did not have any experience in this line of work at all.

Banks filed a state-law diversity action against the company in federal court, contending that she was wrongfully terminated and that Argos had engaged in outrageous conduct. The district court granted summary judgment to Argos on both claims. On appeal, Banks challenges the rejection of her wrongful-termination claim.

II.

As this case comes to us, the parties share common ground about how to handle a wrongful-termination lawsuit under Tennessee law: Banks must show that she was an employee of Argos at the time of her injury; she must show she made a claim against Argos for workers' compensation; she must show that Argos fired her and that the workers' compensation claim was a "substantial factor" in Argos's employment decision; at that point, the burden shifts to Argos to establish that it had a legitimate reason for firing her; and if the company shoulders that burden, it becomes Banks' burden to show that the company's reason was pretextual. *See Canady v.*

*Gillette Co.*, 547 F. App'x 670, 678 (6th Cir. 2013); *Anderson v. Standard Register Corp.*, 857 S.W.2d 555, 558–59 (Tenn. 1993).

(As a side note, there is some debate about whether this Tennessee common-law claim contains all of these requirements at summary judgment, in particular the final pretext burden-shifting requirement. *Compare Gossett v. Tractor Supply Co.*, 320 S.W.3d 777, 782–85 (Tenn. 2010), *with Canady*, 547 F. App'x at 678. *Cf. Scola v. Publix Supermarkets, Inc.*, No. 12-6458, 2014 WL 756708, at *5–7 (6th Cir. Feb. 27, 2014); *Theus v. GlaxoSmithKline*, 452 F. App'x 596, 602 n.8 (6th Cir. 2011). But the issue does not go to our jurisdiction, and we thus take the case as it comes to us and as the parties have opted to litigate it.)

Banks' claim fails as a matter of law. Argos had many legitimate reasons for firing her separate and apart from the filing of her workers' compensation claim. When she applied to work at Argos, she repeatedly misled her interviewers. Where was Dawg, Inc. on her application forms? Was she really a civil servant for the years listed on her résumé? What exactly did she do at AIG, and for how long did she do it? When Argos looked for answers to these questions, it found only omissions, embellishments and lies, all of which supply a fair reason for ending an employment relationship. *Shazor v. Prof'l Mgmt., Ltd.*, 744 F.3d 948, 959 (6th Cir. 2014). Banks does not dispute that all of this in the normal course would supply a legitimate reason for ending an employment relationship.

What Banks does dispute is whether these concededly legitimate reasons for firing her were Argos's real reasons for firing her. Her evidence of pretext, however, falls short of creating a genuine issue of material fact. She starts by pointing to positive work reviews from Argos supervisors. If Argos was happy with her work, she asks, how can it later claim that she was

unqualified for the job? The argument has a dubious factual premise and is beside the point to boot: dubious because the evidence shows that Banks' work was rife with "rookie mistakes" that a veteran claims adjustor would not make, *see, e.g.*, R. 18-7 at 6; and beside the point because, by the time the company fired Banks, it knew that she could not be trusted given her serial and material lies in her job application.

Banks persists that Argos's reason was pretextual because its explanation "shifted" over time. Banks is right in one sense: "Shifting justifications over time [may] call[] the credibility of those justifications into question." *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002). But she is wrong to think that rule applies here. Argos's justification never changed. Two Argos supervisors described the company's rationale for firing Banks. Jan Peine told Banks that Argos fired her because she was not qualified for the claims adjustor position. Todd Larry likewise said that Argos fired Banks because she "had falsified her employment history and did not have the requisite . . . qualifications necessary for the" job. He added that Banks "lacked the honesty/integrity necessary for the position." R. 18-3 at 4. These are not inconsistent, shifting justifications that render summary judgment inappropriate. They are two sides of the same coin: Peine said Banks was unqualified, and Larry explained why.

As a last resort, Banks engages in some "shifting" storytelling of her own. Argos decided to fire her, Banks now alleges, not in March 2012 (when the company formally let her go) but in November 2011, just a few days after she suffered her injury. The evidence does not support the point. Yes, Peine learned early in her investigation that Banks had a long history of repeated workers' compensation claims, that Banks might be a "[p]rofessional claimant," and that Banks could be "trouble." R. 18-7 at 12; R 22-2 at 14. But there is no evidence that anybody in a position to fire Banks decided to exercise that option until (at the earliest) February 2012, when

Todd Larry, the president and chief executive officer of Argos, learned the extent of Banks's employment-history fabrications. At the end of the day, Banks has not produced any direct evidence of pretext and cannot show temporal proximity between the claimed workers'-compensation-covered injury (November 8, 2011) and her notification of discharge (March 5, 2012). Banks's unsupported allegations do not change this fact. The district court correctly rejected this claim as a matter of law.

III.

For these reasons, we affirm.